This morning we are at number 2121177 in the Estate of Gordon Ness. I'm Peter Svendahl, this is John G. Edall, Arguing to be a pawn, Mr. Michael J. Fleck. Arguing to be a pawn, Mr. Mark D. Gordon. Mr. Fleck. Yes. He moves. Thank you, Your Honor. Jeff, are you keeping time? No. Okay, thank you. You can proceed. May it please the Court. My name is Michael Fleck. I, along with my co-counsel Melissa Massey, represent the plaintiff counter defendants, who are also the appellants in this matter, the Estate of Gordon Ness, by their executors, Bonnie Peterson and Linda Merriman. Your Honors, there are two issues before the Court today. First is whether the option contract is invalid as a matter of law. We contend it is not. And if, in fact, it is not, that would be dispositive of the matter. Second, if it is considered to be valid, did the trial court err in finding in favor of the defendants with very limited and incorrect findings of fact that are against the manifest weight of the evidence. Turning to the first issue, it is very clear that an option contract requires at least two elements. And the first being that there is a unilateral offer to sell, and second, for a specified time. What's missing in this particular case is that the specified time is not included in the option contract. Why can't we read the option contract and the lease together since they were executed on the same day by the same party and they pertain to the same subject matter? Well, one of the issues, Your Honor, is that the lease does have a term, but it doesn't make reference to that being the option term. The option term can be less than the lease term, and the lease itself was not recorded with the rest of the documents, and that's a big issue here. Counsel, can I interject this? Make sure I have the facts straight. The lease, as I read it, specifically states that the option may be exercised at any time during the term of this lease. Does it not say that? Yes, but again, that wasn't recorded with the option. But why does it have to be recorded? Can you cite us to a case that says to be valid it must be recorded? Well, in order for anybody to be bound by the terms of the agreement and to see what's in the recorded record of what this option means, it would be necessary to have all of the valid elements of an option to be included in that. Well, what third party would need to see this? The issue was between the decedent and the other parties to the contract. Now they hear us. Yes, and any third parties that wish to purchase the property would want to know whether that option is cloud on title. And here's the big thing here, is that the attorney who drafted it, Mr. Becker, also stated in his testimony, as long as they were current with their lease payments, they could exercise the option. The fact of the matter is that option was never exercised prior to them not paying any, and I quote, lease payments anymore. Now that kind of goes to the second issue as to whether or not they exercise the option and whether or not they could exercise the option. But that kind of raises the point. The issue on the validity of options in Illinois is pretty clear, that it needs to be a unilateral offer for a specified term, and that's just frankly not there in the option agreement. There was no term specified in the lease of the option? Wasn't it for 20 years? Well, there was a lease for 20 years, and it did make reference to that. You are correct, Your Honor, and I'm sorry if I misstated that. But the option itself that was brought to the executors when John and Dawn Ness claimed they owned the farm, they didn't bring the lease. They never mentioned the lease. They didn't think that the lease was part of this. But is that a legal requirement? What you're arguing has some intuitive appeal, but can you say case law, do you have any case law to cite that if they don't bring that, the documents are null and void? Well, it's because anybody needs to be able to look at the four corners of the option agreement itself, and because that is the reason. Anybody or the parties need to be able to. You're talking about the nebulous anybody. I don't know what that has to do with the parties here. Well, the purpose of recording an option, Your Honor, is to make sure that anybody can see what there are in terms of encumbrances. Right, but is that a legal requirement? Can you point us to any case law that stands for that proposition? I simply point you to the line of cases related to options, including Bruss v. Klein, Soderholm, Kellner, all cited in our brief, that talk about it's very clear that two elements must therefore exist, unilateral offer to sell and a contract to leave the offer open for the specified time. And we didn't have that here. When you read all the documents together, the lease, the option contract, the three documents, you're saying those elements simply were not there. Well, if you want to read the three documents together, I suppose you could. I think that's the law, really. Well, but the issue is that none of the parties thought, and even the drafting attorney who recorded the option didn't think it was important to include that in the recorded documents, and none of the parties were bringing the lease as part of it until they were trying to Monday morning quarterback the issue. We Monday morning quarterback here. We look at an issue regarding how to interpret the contract in Oval, correct? Yes. Yes, you do. And it's very clear with the Bishop v. Lakeland Animal Hospital case that an ambiguous contract is construed against the drafter. The drafter of this contract was John and Dawn Ness through their attorney, Mr. Becker, not Mr. Gordon Ness. And they shouldn't be able to benefit from their errors in drafting to read into a term that is ambiguous. And that's why we brought this as a declaratory judgment. Mr. Ness, Gordon Ness, executed the documents. There's no allegation that he was infirm or he lacked capacity at the time that he signed the documents, is there? No, as far as that specific issue, no, Your Honor. But what surrounded the formation of this agreement, what the real purpose of this agreement, I think, was flushed out quite well in the trial court. This was brought about because John and Dawn Ness were storing property on Mr. Ness' farm before the option was entered into. They built a barn or a storage shed, whatever you want to call it, and then they came up to him and said, how are you going to pay for this? And he was already working for John Ness Construction being paid $1,000 a month, and suddenly we have an option contract to purchase the property under the terms that are there for a certain price. We still contend that there's an issue as to whether or not the terms for a length of time is there. But they continued to just pay him $1,000 a month like they had before all of this started. With an agreement to continue to do that for 20 years? To lease the property for 20 years. Now, that's under the terms of the lease, which was supposedly for storage. Now, is this following under your second argument that there's a lack of consideration to support the contract? Is that sort of what you're suggesting? Yes, that does lead to that issue. Basically, they were paying no more than they had been paying prior to the building of the storage shed. Remember, there was no agreement to build the storage shed. It was built, and then he said, how are you going to pay for this? But moreover, the evidence is clear. It's evidence that was presented by the defendants as well. They were paying him $1,000 a month prior. They paid him $1,000 a month after. And really what nails this coffin is that they quit paying as soon as Gordon died. Let's get into a separate issue. They quit paying when your clients indicated that they didn't feel it was a valid contract, correct? Well, actually, no. First of all, they didn't know. And when I say they, I mean the executors. The executors were never made aware of a lease until after this case was commenced. There was an issue, according to the documents in the record, that unfortunately, and I'm sure it was very sad, that during a get-together at one of the bonus houses following the services, there was a quote in there that they told the other side that they didn't believe the contract was valid. There was no contract. Didn't that happen? Well, because they had said, we own the farm. And they weren't given any documents at that particular meeting. Well, didn't the next day John come to Linda's house with a copy of the auction contract, and Linda said it's not enforceable shortly after that, and that's when he stopped paying? Well, and very tellingly, he did not bring a copy of the lease with that. Right, but he brought a copy of the auction contract. Yes. But let's say all that's true. Again, you are giving some common sense things here, but we have to decide, quite frankly, if these are legal requirements. And so far, I haven't seen any case law that says if they didn't show up at the door with the lease or the contract and all the right documents, somehow the whole transaction is invalid. Well, remember, they said at the memorial service that they owned the farm. Not that they had an option on the farm. They said they owned the farm. And they used the... Who said that? John Dawn Ness. They said... Dawn, I think, said that. Yes, Dawn said that, and I think John had agreed to that in his testimony. When John showed up the next day, he didn't bring a deed. He didn't bring a contract that needed to be closed. He didn't bring an installment agreement for deed. He brought the option contract that had never been executed. And when it was looked at, remember, no term in that option contract, the recorded documents, the eight pages that were recorded, that's what Bonnie Peterson had in front of her when she looked at that. And there was no term. Okay, so she might have been surprised and taken aback, but you're not indicating that she never indicated that they were not going to honor that agreement. You're not saying that, are you? No, no. At the time, they're saying that this isn't proof... Right, this isn't agreement, right. This isn't proof that you own the farm at all. And, in fact, they never executed. But Bonnie didn't say, this isn't executed, and this isn't in conjunction with the lease, and the legal requirements aren't met here. Bonnie wasn't talking legally. Bonnie was just talking more emotionally, and by looking at it, saying, nope, we're not honoring it, correct? So, in his mind, he felt, I'm going to quit paying because they're not going to honor it. Well, I don't think that's exactly what happened because we can turn to Dawn's testimony. Her testimony is telling. It has nothing to do with that meeting. It has to do with Dawn saying, well, he wasn't working for us anymore. We quit paying him. It just shows that that payment was really for compensation for services rendered by Gordon to John Ness Construction, and potentially for storing property on his property. How would you respond to this? And I see the argument that, you know, there is an element of the law that you can't support a contract for a consideration that's already in the transaction. However, where was their agreement that they were obligated to pay him for the 20-year period? Isn't the 20-year period a different requirement than just paying him for their, you know, just because he's there and they're renting the property? Well, yeah. You can't support a contract. Isn't that beyond what was going on initially? Well, but the payments then get further broken down if the option is exercised and the deal is closed. Right now, we have a lease for $1,000 a month, and if there were no option, if the option is never exercised, there'd be no credit, obviously. It's $1,000 a month. Right. And the thing is, I still contend that we have an issue because is it really $1,000 a month for the lease, or was it the $1,000 a month that was being paid ahead of time and they decided to couch it as something else? Well, the documents ostensibly indicate it's for the option, right? They indicate that it's a lease payment. Right. What happens is, if and only if the transaction closes, $600 of each of those $1,000 payments gets credited towards the purchase price. Well, how else would you have it? Because why would your side give the other side credit if they didn't exercise it? That's the way a lot of leases operate, right? Well, sure. Yes, that is how they are. But remember, this was never exercised. We never closed a deal here. Well, they couldn't close it then because he was alive and things were going well fine. They had 20 years. Why would they close it earlier than the 20 years if they didn't have to? Well, again, we go back to the contention that we don't think that the term was 20 years. We stand on the terms of the option contract and the case law that supports what needs to be in an option contract. Well, assume for the sake of argument that we don't agree with that and we read the documents together and the term was 20 years. Answer Justice Sessions' question. Okay. What are those parameters? Well, again, the option, according to Mr. Becker's testimony, the drafter of the contract, does end if they quit making their lease payments. They never tried to tender lease payments to the estate. They didn't say, well, we have a lease. We still need to make payments. Let's put it in escrow or anything. We didn't know about a lease until after this case was commenced. I understand. We're talking about laypeople here. They're not lawyers, presumably. So you're saying look at this from a common-sense standpoint, and I agree with you. However, if you are laypeople and somebody tells you that they're not going to honor this agreement and they don't agree with you, are you going to continue sending them $1,000 checks every month and you may never get this money back? What would you do? Well, I can't answer what they would do. That's mere speculation. But what I would say is this. Irrespective of whether the option was honored, remember the question at that meeting is we own the farm or do we not own the farm, not is this a valid option or not. They said they own the farm. They showed up with an option agreement. Were Bernie Marx saying no, you don't own the farm or they're not going to honor this transaction? Wasn't that clearly the gist of the message is we're not going along with any kind of option and you're going to get this property? That's pretty clear from the context. Well, okay. But, again, they still have an obligation to continue to make lease payments. They didn't even try. Had they said, by the way, we have a lease and $600 of each month's lease payment gets credited towards our purchase price, they had all the knowledge of the lease. Do you think they were thinking like lawyers at that point, let's choose our words correctly and let's make sure that we say lease as opposed to option contract? And this is my point when you were talking about your client reading this option contract. These people aren't lawyers. You're trying to put into their mouths legal terms and saying they misused them because they intended to say this or they meant this when they said that. They're not lawyers. You're here before us arguing oral arguments because you're a lawyer and you know what these terms are. Don't impute these terms to lay people and expect that they're using the words correctly. I see my time is up. May I answer the question? Sure. Okay. The answer, in part, is that Bonnie Peterson also testified that she was in the real estate field. She's a realtor. And she understands some of this information quite a bit. What the question was is not whether the option is valid. Again, at that time it was we own the farm, here's our proof that we own the farm. That's not proof that they own a farm. A realtor would know that. Do you think they meant own the farm literally or do you think they meant we're buying the farm? I believe that the testimony shows that Dawn later on said that she was mistaken and didn't understand, even though she also testified that her lawyer explained to her what they needed to do to exercise the option and they didn't do it. They didn't do it up at the time that they closed the case. If they had done so, we'd still be here, correct? Well, quite possibly. The issues might be slightly different. Slightly different, but we'd still be here. Yes. But I think the testimony is clear that it's against the manifest ways of the evidence. Thank you. Mr. Doherty. Mr. Doherty, before you start, I want to ask you a few questions. The statement that Dawn made that he isn't working anymore so we quit making the payments, doesn't that, as your opponent states, show that their basis for making these payments was more in line with compensation for the father or father-in-law working for the company than it was for payment of a lease or payment of an option to purchase? Respectfully, Your Honor, her answer was more than just that part of that statement. She said also that the state had already indicated that it wasn't going to honor the option. She also said, as you cite, language referencing that Gordon was no longer alive. So in the full context of her full response, I think she indicates the state was not going to honor the agreement. And later when I posed the question to her during my examination, she stated very clearly that they stopped because the state refused to honor the option. What about the- I'm sorry. Go ahead. The counterpoint that if you intended to exercise the option, you still are required to continue to make payments. That is not something that only lawyers know, that you should still continue to make the payments, put them in escrow. That's a fairly common thing to do. People escrow their taxes. People escrow rent payments when there's a dispute. You don't need a lawyer to tell you that. Your Honor, I believe that John and Dawn Ness's performance was excused as soon as the state refused to honor the option. They breached the contract by failing to honor it. They notified my clients of such. And as State Attorney William Blair and co. cited in my brief at page 27, at that point John and Dawn Ness had no obligation to continue making payments. Because John and Dawn Ness breached the contract? No, because of the estate. Did they breach the contract by failing to pay? They only stopped paying. I understand when they stopped paying. Why didn't they put it in escrow? I don't have an answer for you other than I think that they did what they understood to be the right thing at the time, which was, hold on, you're telling us that you're not going to honor the agreement. We're not going to continue paying you until you resolve this. Is there a law regarding anticipatory repudiation? Isn't there a document that says that? There is, Your Honor, and I believe the case reference to William Blair and co. references just that. We are anticipating that you are breaching this contract. You, in fact, told us that you're not going to honor, and at that point we don't have the obligation. Is that a performance excuse under the law? Is that what the case is? Correct. And at that point it's uncontested? I believe so. One other point that your opponent made was we're talking about the lease and the option of purchase, and the lease was certainly executed at the same time, however, it was not recorded. If a third party wanted to purchase this property, how would they know that there was any cloud or any lease option out there? The option was recorded. So title, in fact, when the estate, shortly after Gordon's death, the estate did have someone pull title, do title search, and the option showed. So any third party who was interested in this. We would have seen this option. I knew there was some agreement regarding it. That's correct. And I think the court is correct when you indicated earlier there's no requirement that any part of this be recorded. The option itself, or the lease, doesn't say that either of the agreements have to be recorded. They did. They put the public on notice that there was something out there. There was no requirement that they put their lease terms out there. It is abundantly clear that the parties believed that the lease and the option were the same agreement. In fact, the lease expressly states that. It says we have executed an option simultaneously. And it is incorporated and made a part of this agreement by an exhibit. The lease is a 20-year term. And as the court indicated, I believe you cited the language of the lease exactly, that the option could be executed at any time during that 20-year term. So what we have is a valid enforceable contract under the law. It meets the requirements from option contracts. It has an option for the optionee to purchase the property. And it has a specified time for them to do it. This discussion by the estate that the Johnny Gomez believed that they owned it, for lack of a better phrase, Justices, I say so what? Whether they own it or not isn't imperative to whether they have the right to own it. They have the right to purchase it. They still have that right, the lease and the option, to only expire until October 31st of 2020. What was the consideration? The consideration was lease payments for the use of the property, payment to Mr. Ness, sorry, Gordon Ness for that opportunity. How do you respond to their argument there was no new consideration to support that however? Gordon Ness worked with John Ness Construction for 20 years. Ten of those years were prior to the negotiation and execution of this agreement. There is no evidence that those $1,000 payments were being made to Gordon Ness during those 10 years leading up to the execution of this document. In the months preceding execution, a handful of months, they started paying him $1,000. And then they reached the agreement that memorialized the purposes for these payments. So it's very clear that the parties said here's our arrangement and now we're putting it in writing. And now we're obligated for 20 years. And now we're here before 12 more obligations. That's correct, Your Honor. The alternative is they have to find some other place to store their equipment. That might have been a requirement Gordon said if you don't do this then get your stuff out of my fund. We simply don't know. Maybe it was just a good father-son relationship. And I think they shared that. And I think the testimony is such that a handshake was essentially enough for this gentleman. But in this instance, given the importance of this particular property and the amount of money involved, I think they thought it important to put this in writing. So not only do we have a valid option, we have the parties acting as if it's valid. They made the $1,000 payments 122 times. Gordon accepted those payments and filed nine years of tax returns where he indicates that a portion of those payments is going toward the sale of the subject property. If he thought there was no valid or enforceable option, why would he indicate to his accountant that I'm selling the property? He wouldn't have. And if he did take that, he still never made it known to John and Don Ness that he thought the option were invalid, that he would be equitably stopped from now claiming that it is invalid. So he, who signed it, clearly recognized this was an option contract. The decedent was never indicating anything otherwise, was he? That's correct. He never put my clients on any sort of notice of any concern relative to the option. In fact, all indications are that he thought it was valid. In fact, he thought he was selling the property to John and Don Ness with the manner of each of these payments. And that's how he filed his tax returns. Now, the estate has argued that these tax returns were improperly filed. The accountant, a master's degree in taxation, a president at the bank in dealing with tax returns, says that it would have been fraudulent for him to have filed his returns in any other manner. But even if you were to say, assuming argument that the tax returns were invalid or improperly filed, again I say, for lack of a better phrase, so what? It still indicates the intent of Gordon Ness that he thought this option was valid and at least open to be executed, or he wouldn't continue taking these payments and applying them as such. So we have the document itself, the four corners that clearly establishes that this is a lease with an option, can be exercised in 20 years. Then we have the conduct of the parties, believing that they're exercising it, or at least that they may still do so. Would you make of the attorney's testimony that your opponent points out, or he indicates that they had to keep making the lease payments in order to retain the right to exercise the option? The lease itself says that the option may be exercised within the term of the lease. My expectation is that attorney believed if the lease were no longer in effect, then the option couldn't be exercised. But the lease was in effect. And again, we only stopped, my clients only stopped making payments when the estate was rejecting the idea that this option could ever be exercised or was valid. So we had a fully in effect lease. My clients had the right to exercise it. They did so. They made the payments. When they tendered formal notice through counsel to the estate that they were exercising the lease, the estate again said no. And this, again chronologically, Judge, is right around the time that just after Gordon dies in April. So the April payment is made. By May, it's clear that the estate will not honor this option, and that's the first payment they stopped making. The estate never indicated any objection, whether through counsel, before the lawsuit, in the lawsuit, during trial. They never notified my clients of any objection to not receiving the payment. If they thought that they needed or expected to continue receiving $1,000 payments while all this was up in the air, they could have done that. In fact, the lease states that there is a demand feature at the last paragraph of the lease referencing the expectation or need for a demand if you don't receive payments. And it makes no such demand. What do you make of, and your opponent makes quite a bit in his briefs of the fact that the trial court failed to make any specific findings prior to rendering his decision? Is a trial court required to make specific findings? It is not. As indicated in my brief, Your Honor, it is long held in Illinois courts, the appellate courts, that the trial court has no obligation to make specific findings, effects, or conclusions on legal issues. And if they don't, the presumption is in favor of the prevailing party. My clients prevailed at trial. We had written closing arguments submitted to the court. They had the opportunity to review and rely upon in making this judgment, which clearly set forth my client's position on all issues of fact and our belief on what the accurate application was. You're saying he was sure, sir? Absolutely, Your Judge, yes. So given that Judge Klein ruled in favor of John and Don Ness, the presumption is that he believed that there was merit and value in their positions as submitted in the written closing argument. Did the company continue to store the trucks and other equipment on the property after the Ness's were told by the estate that we're not going to honor the option? Yes. So the company continued to use the property as if the lease was still in effect? Yes. Understanding, however, that there was an ongoing dispute that was now being litigated. So I think that the idea was to maintain the status quo as relative to their operations there until we resolved it. And now three years later, we're in 40. Right. And so then did they make the back payments to the estate? That issue wasn't raised at trial as to whether there's an obligation, some sort of offset relative to lease payments that would continue to be made. That would be required, wouldn't it? I think that's probably reasonable. And I don't think my clients would have an issue. I think they were making all lease payments until this dispute arose. And I imagine they would have continued to do so until they exercised the option, had the estate honored the option. I understand my time is running here and that the judges are fully aware of the standard of review here. But I want to make sure that the court considers that your grant or denial of this declaratory relief will only, shall only be reversed on showing an abuse of discretion. And I apologize for having to quote this, but I want to get it accurately from the case law. An abuse of discretion means clearly against logic. The question is not whether the appellate court agrees with the circuit court, but whether the circuit court acted arbitrarily without employing conscientious judgment, or whether, in view of all the circumstances, the court exceeded the bounds of reason and ignored recognized principles of law so that substantial prejudice resulted. We don't have that here. Judge Klein had before him the opportunity to view the witnesses, their credibility, examine written closing arguments. So with all case law that we thought was important cited in those briefs, and he made a ruling that is clearly founded by the record. We could start and end with the lease with the option that provides all the relevant terms. We, my clients, performed consistent with that. Related to the breach of contract claim, this court would have to find that Judge Klein's ruling was against the manifest way of the evidence. As if all of this evidence sat over here with the estate and yet he ruled over here. We don't have that. We have the contract again, expressly states the terms, and then we have the conduct of the parties carrying out that contract for almost 10 years. Consistent with the belief and expectations that that option agreement remained viable and enforceable. You don't even have to agree with the trial court's decision as long as there is some reasonable ground for his determination in favor of John Dunness. Thank you, John. Thank you. Mr. Please, of course. First of all, I want to make it very clear because I think it's important to the analysis here is how can they be excused from making these payments when they never informed the state that there was a lease? I'm sorry. Say that again. I wasn't as a judge should be paying attention. I wasn't paying attention. How can John and Dawn Ness be excused from making lease payments when they were never when they never informed the estate that a lease existed until well after this litigation commenced and then it was turned over in discovery? That makes no sense. It's very important for this court to be aware that the lease was not disclosed until after the litigation, many, many months after payments were ceased to be made. They never said we won't accept your lease payments because they didn't know the lease existed. Why did they let the company continue to use the property for storage? Well, this is family. Right. Yes, it is family. But they didn't know that there was any kind of a lease for the storage. Then why didn't they demand the execution of some kind of a lease while this litigation was pending? Well, I don't know why that would have happened, but I do know this, that the defendants were aware of the lease. They were aware of their obligations of the lease. They didn't disclose the lease to the other side, and they quit making payments on their own. We were never told about a lease. What about counsel's argument that the law permits the defendant to refrain from making payments when there's been an anticipatory breach, when the other side says we're not going to honor the contract? What's anticipatorily being breached, the option or the lease? If they thought there was an anticipatory breach of the lease and the other side didn't know a lease existed, I don't know how that would be the option. Well, say they're not honoring the agreement. Doesn't that really encompass both? They didn't know that the lease was part of the agreement. They were unaware of the lease. Did they think they were living there for free? They weren't living there. They were just storing construction equipment. They knew that their dad was working there. And I do want to focus on the language that Dawn Ness said, because this is very vital testimony. This was impeachment from her deposition as to what was being brought in the direct examination. She said, Gordon wasn't working for us. The whole purpose, as I said before, of us paying him that $1,000 a month was to compensate him without affecting his taxable income. Well, we weren't compensating him anymore. The whole purpose was compensating him for work. It didn't say anything about a lease. It didn't say anything about option payments. Nothing. Dawn Ness, in her deposition, and then brought out at trial was, he wasn't working for us. That's why we quit paying. That is key to this issue here. Which was resolved against you. This is a manifest way issue, correct? Yes, and that's a really good point. Because the one finding that the trial court did make was he went to a lawyer. There is no testimony that Gordon went to a lawyer. The only person that went to a lawyer was John and Dawn Ness. But what does that have to do with anything? Well, because it shows that a finding, a fact that was made that's completely opposite of the testimony that was articulated in the decision was wrong. Well, that may be true. Let's assume you're 100% correct. Would you also agree the erroneous finding of fact to be of any consequence has to be relevant to an issue in the case? I think what it shows, Your Honor, is that if that finding of fact was wrong, how much of the rest of the testimony was not understood? Is there some legal presumption that if the judge makes an erroneous ruling on a non-issue, that the judge's whole ruling must be wrong? Well, I think it's an issue. I think it's an issue because it goes to who drafted the agreement, whether or not there was an arm's-length transaction. That goes to the validity of the formation of the contract. Again, since you never challenged that Mr. Ness was infirm or there was some undue influence being exerted, I don't see how it ties into the issue. Well, it ties into an understanding of the facts as they were presented. And I think that when the court looks at all of the testimony, especially the fact, and for the first time I'm hearing that these $1,000 payments before the formation of the option contract were somehow memorialized. I don't think that's in the record at all, at all. And that shows that there was no consideration that the $1,000 was being paid for something else, that Don Ness's testimony, that the whole purpose, as I said before, was to compensate him without affecting his taxable income, and he wasn't working for us anymore. That is so key and so relevant to the issues before the court as to whether or not this option was really what it is or if it was couched as something else. Were the back payments ordered by the court to the sisters? No. No, they were not. So for that reason, that relief was not requested though, correct? Well, may I finish my answer? I don't want to misspeak. It's in the transcript, and I think there was a question about how certain things get applied, and I don't have it before me, so I would hate to misquote it. But for these reasons, we think that the judgment of the trial court should be reversed and judgment entered in favor of the appellate. Thank you very much. Okay. Gentlemen, thank you so much for your very well-written briefs, for your very well-prepared arguments here today. We appreciate when the litigants come before us prepared to argue, and we do appreciate the time that you have taken. A decision will be rendered in due course. This court will be adjourned for the day. Thank you very much.